IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY,

   Petitioner,

      v.

JAMES FOWLER and ROBERT
PARISH,

   Respondents.

CIVIL ACTION FILE
NO. 1:21-CV-4534-TWT

### OPINION AND ORDER

This is a declaratory judgment action. It is before the Court on the Petitioner Allstate's Motion for Summary Judgment [Doc. 24]. For the reasons set forth below, the Petitioner Allstate's Motion for Summary Judgment [Doc. 24] is GRANTED.

### I. Background[1]

#### A. The Corvette Sale and Respondent Fowler's Injuries

This case arises from injuries that Respondent James Fowler sustained while loading a blue 1975 Corvette that he bought from Respondent Robert Parish onto his trailer. (Pet'r's Statement of Material Facts in Supp. of Pet'r's

---

[1] The operative facts on the Motion for Summary Judgment are taken from the parties' Statements of Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

Mot. for Summ. J. ¶ 1–3; Compl., Exs. 1–2.)[2] Prior to the sale, Parish kept the Corvette stored in his garage for 15-16 years and never drove it beyond his driveway. (Pet'r's Statement of Material Facts in Supp. of Pet'r's Mot. for Summ. J. ¶¶ 4–5.) He only intermittently started the car, backed it out of the garage, and allowed the engine to run to prevent the car's battery from dying. (*Id.* ¶ 4.)

On September 22, 2018, Fowler arrived at Parish's residence to purchase and load the Corvette onto Fowler's tractor trailer. (*Id.* ¶¶ 2–3.) Parish reminded Fowler on the day of the sale that the Corvette had faulty brakes. (*Id.* at ¶ 6.) Before loading the Corvette, Parish and Fowler agreed that Parish would drive the car onto the trailer. (*Id.* ¶ 7.) Parish slowly drove the Corvette up the trailer ramp, while Fowler stood on the opposite end of the trailer. (*Id.* at ¶¶ 9–10.) By the time the car's back tires cleared the start of the ramp, Parish noticed that Fowler had fallen off the back of the trailer. (*Id.* at

---

[2] Parish objects to Allstate's second Statement of Material Fact "as a statement supported by a citation to a pleading rather than to evidence" in violation of Local Rule 56.1(B)(1). (Pet'r's Statement of Material Facts in Supp. of Pet'r's Mot. for Summ. J. ¶ 2). The Court finds no error because Allstate cites to an Exhibit of the Complaint, not the Complaint itself. And though the Exhibit is itself the complaint to the state court lawsuit underlying this declaratory action, *James Fowler v. Robert Parish*, Civil Action No. 20-A-1163 (Cobb Cnty. State Ct. Mar. 26, 2020) ("Underlying Lawsuit"), the Court finds Allstate's reference to the Underlying Lawsuit's complaint valid because Allstate offers the complaint to show that the allegations in the complaint exist. Further, Parish seeks coverage, indemnification, and/or a legal defense from Allstate for the allegations in the Underlying Lawsuit's complaint. Thus, its reference in this case is appropriate.

¶ 11.) Parish stopped the car and proceeded to check on Fowler and assist with his injuries. (*Id.* at ¶ 12.) Parish testified that he took Fowler to urgent care and the emergency room after his fall and that he and Fowler finalized the sale of the Corvette the next day. (Resp't Parish's Statement of Add'l Material Facts ¶¶ 2–3.) Parish also testified that Fowler stated that he would not pay for his medical treatment and that Fowler "didn't say anything about filing a claim [but Parish] assumed he might file a claim." (*Id.* ¶¶ 6–7.)

### B. Respondent Parish's Homeowners Policy

An Allstate Deluxe Plus Homeowners Insurance Policy ("Policy") covered Parish's residence where the incident occurred. (Pet'r's Statement of Material Facts in Supp. of Pet'r's Mot. for Summ. J. ¶ 1; Compl., Ex. 1). The Policy contains various provisions applicable to the current case. First, the Family Liability Protection section under Coverage X of the Policy contains the following language:

> **Losses We Do Not Cover Under Coverage X:**
> 5. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
>    a) a motor vehicle in dead storage or used exclusively on an **insured premises** . . . .

(Compl., Ex. 1, at 39–40.) The Court refers to this provision of the Policy as the "Motor Vehicle Exclusion." When specifically addressing "use" of a motor vehicle under this provision, the Court refers to the provision as the "Motor Vehicle Use Exclusion." When specifically addressing "loading" of a motor

3

vehicle under this provision, the Court refers to the provision as the "Motor Vehicle Loading Exclusion."

Second, the Guest Medical Protection section under Coverage Y of the Policy contains the following language:

### Losses We Do Not Cover Under Coverage Y:
5. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises** . . . .

(*Id.* at 42.) The Court refers to the Motor Vehicle Exclusion, Motor Vehicle Use Exclusion, and Motor Vehicle Loading Exclusion in Coverages X and Y interchangeably, though Coverage X covers the policyholder's family members and Coverage Y covers the policyholder's guests on the insured premises.

### C. The Underlying Lawsuit and the Present Case

On March 26, 2020, Fowler sued Parish in Cobb County State Court for damages to recover for the cost of his injuries from loading the Corvette onto the trailer. (Pet'r's Statement of Material Facts in Supp. of Pet'r's Mot. for Summ. J. ¶ 16; Compl., Ex. 2.) Parish was not served with process for the lawsuit until May 21, 2020. (Resp't Parish's Statement of Add'l Material Facts ¶ 13.) Parish notified Allstate of the lawsuit the following day. (Pet'r's Statement of Material Facts in Supp. of Pet'r's Mot. for Summ. J. ¶ 18.) On November 3, 2021, Allstate filed this action seeking declarations from this Court that the Policy's Motor Vehicle Exclusion (Counts I and III), Negligent

4

Supervision Exclusion (Count II), and Prompt Notice of Loss Requirement (Count IV) provisions preclude coverage of Fowler's injuries in the Underlying Lawsuit. (Compl., at 5, 8, 9, 11). Allstate now moves for summary judgment on its claims in Counts I, III, and IV.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

Georgia law treats insurance disputes as a matter of contract, and thus, a contract's plain and unambiguous terms bind the parties to an insurance policy. *Old Republic Union Ins. Co. v. Floyd Beasley & Sons, Inc.*, 250 Ga. App. 673, 675 (2001) (citation omitted). In resolving a dispute between parties over an insurance contract, a reviewing court must determine whether the contested policy language is ambiguous. *Id.* "A policy which is susceptible to

5

two reasonable meanings is not ambiguous if the trial court can resolve the conflicting interpretations by applying the rules of contract construction." *Id.* Under O.C.G.A. § 13-2-2(5), Georgia courts must construe ambiguous language in an insurance contract strictly against the insurer and in favor of the insured. O.C.G.A. § 13-2-2(5); *State Farm Fire & Cas. Co. v. Walnut Ave. Partners, LLC*, 296 Ga. App. 648, 650 (2009) (citation omitted). Finally, an insurer must clearly and distinctly define any exclusions in a policy granting coverage to an insured. *Walnut Ave.*, 296 Ga. App. at 650.

### III.  Discussion

Allstate moves for summary judgment as to its claims for declaratory relief in Counts I, III, and IV and asks that the Court find that it has no duty to provide coverage, indemnity, or a defense to Parish under the Policy's Family Liability Protection section of Coverage X and no duty to provide coverage to Fowler under the Policy's Guest Medical Protection section of Coverage Y, based on the Motor Vehicle Use Exclusion provisions in both sections of the Policy. (Pet'r's Mot. for Summ. J., at 1–2.) Allstate also argues that the plain terms of the Policy's Motor Vehicle Loading Exclusion provisions bar coverage in the case. (Pet'r's Reply Br. in Supp. of Pet'r's Mot. for Summ. J., at 2.) Finally, Allstate requests that the Court find that Parish failed to promptly notify it of the subject incident and that Allstate, therefore, has no duty to provide a defense to Parish or coverage to Fowler for his injuries because such notice operated as a condition precedent to coverage. (Pet'r's Mot.

for Summ. J., at 2.) Parish opposes Allstate's Motion for Summary Judgment on the grounds that genuine issues of fact remain regarding the definition of "dead storage" and the cause of Fowler's fall from the trailer. (Resp't Parish's Resp. to Pet'r's Mot. for Summ. J., at 24.)

Allstate's Motion for Summary Judgment and Parish's Response in Opposition present four primary issues: (1) whether the Policy's Motor Vehicle Use Exclusion provisions bar coverage in the case; (2) whether the Policy's Motor Vehicle Loading Exclusion provisions bar coverage in the case; (3) whether the Policy's Dead Storage Exception provisions apply; and (4) whether Parish promptly notified Allstate of the injury to Fowler. (Pet'r's Mot. for Summ. J., at 9, 14, 17; Resp't Parish's Resp. to Pet'r's Mot. for Summ. J., at 7, 13, 21.) The Court addresses the four primary issues in turn.

### A. Motor Vehicle Use Exclusion

The Policy's two Motor Vehicle Use Exclusion provisions under the Family Liability Protection section of Coverage X and the Guest Medical Protection section of Coverage Y contain nearly identical language. (*See* Compl., Ex. 1, at 39–40, 42.) Both provisions preclude coverage for "bodily injury . . . arising out of the . . . use . . . of any motor vehicle or trailer." (*Id.*) Allstate argues that the Policy bars coverage because Fowler's injuries arose out of the use of a motor vehicle—the Corvette. (Pet'r's Mot. for Summ. J., at 9–13.) Parish responds that the issue is irrelevant because the dead storage exception applies in the case. (Resp't Parish's Resp. to Pet'r's Mot. for Summ.

7

J., at 21–22.)

Allstate cites *Hays v. Georgia Farm Bureau Mutual Insurance Co.,* 314 Ga. App. 110, 112 (2012) (holding that the motor vehicle exclusion provision of a homeowner's insurance policy barred coverage to a plaintiff who was injured on the defendant's property while attempting to hoist a portable toilet onto a deer stand using a pulley system connected to the defendant's truck) in support of its claim that Fowler's injuries arose out of the use of a motor vehicle and that the Policy therefore precludes coverage of his injuries. (Pet'r's Mot. for Summ. J., at 9). In *Hays*, the Georgia Court of Appeals set forth three factors for determining whether an injury arose out of the use of a motor vehicle: "(i) the physical proximity of the injury site to the vehicle, (ii) the nature of the conduct which caused the situation of jeopardy, and (iii) whether the vehicle was being 'utilized' in the plain and ordinary sense of the word." *Hays*, 314 Ga. App. at 112 (quotation marks and citation omitted).

### 1. *Hays* Factor 1: Physical Proximity

Regarding the first factor, Allstate argues that the proximity factor is met because Fowler was standing "*upon* the trailer" at the time of his injury while Parish drove the Corvette up the ramp. (Pet'r's Mot. for Summ. J., at 10.) The Court finds that the first factor weighs in favor of exclusion. The court in *Hays* considered that the defendant's truck "was at or near the location of the accident" in finding that the plaintiff's injuries arose out of the use of the truck. *Hays*, 314 Ga. App. at 113. Here, Allstate and Parish do not dispute that the

8

Corvette was at or near the location where Fowler was injured. (*See* Pet'r's Statement of Material Facts in Supp. of Pet'r's Mot. for Summ. J. ¶ 11.) Thus, the physical proximity of Fowler's injury site to the Corvette on the trailer favors a finding of exclusion under the Policy's Motor Vehicle Use Exclusion provision.

### 2. *Hays* Factor 2: Nature of Conduct

Regarding the second factor, Allstate claims that loading the Corvette onto the trailer is at least an aggravating cause of Fowler's injuries because the injuries occurred during and as a result of the process of loading the Corvette onto the trailer. (Pet'r's Mot. for Summ. J., at 11.) Parish counters that the second factor is not met because both Respondents knew that the Corvette was without working brakes when it was loaded onto the trailer and because Parish and Fowler dispute the cause of Fowler's injuries. (Resp't Parish's Resp. to Pet'r's Mot. for Summ. J., at 22–23.)[3]

The second factor often turns on whether the nature of the conduct that caused the injury is related to the "actual operation" of the motor vehicle. *See, e.g., Roberts v. Burke Cnty. Sch. Dist.*, 267 Ga. 665, 668 (1997). In *Roberts*, the defendant–school district negligently selected and implemented an unsafe bus route with stops "along a heavily traveled road with no crosswalks and a 55 mph speed limit." *Id.* at 665–66. After the bus dropped off a five-year-old boy

---

[3] Parish's arguments regarding the first factor appear to relate to the second factor; thus, the Court considers them here.

at the unsafe stop, the boy was struck and killed by a van while crossing the street to his house approximately four-tenths of a mile from the stop. *Id.* The Georgia Supreme Court found that the nature of the conduct that caused the injury—the school district's negligent bus route selection—was removed enough from the actual operation of the school bus such that the second factor favored a finding of preclusion of coverage for the boy's wrongful death under the applicable insurance policy. *Id.* at 668.

Here, the Court agrees with Allstate that under either recitation of the facts—whether Parish negligently injured Fowler or whether Fowler fell off the trailer on his own accord—the nature of the conduct causing the situation of jeopardy (Fowler's precarious perch on the end of the trailer) is plainly related to the operation of the motor vehicle (loading the Corvette onto the trailer). (Pet'r's Mot. for Summ. J., at 11.) The loading of the Corvette is analogous to the nature of the conduct at issue in *Hays*, where the plaintiff sustained injuries in attempting to use the defendant's truck to load the toilet onto the deer stand. And the nature of the conduct is distinguishable from the more attenuated factual circumstance at issue in *Roberts*, where the school district's negligent bus route selection was removed from the actual operation of the bus. Accordingly, the second factor favors exclusion.

### 3. *Hays* Factor 3: Plain and Ordinary Use

Finally, regarding the third factor, Allstate argues that Parish and Fowler used the trailer and the Corvette in the plain and ordinary sense

because they were using the trailer as a transportation device and because Parish was driving the car. (Pet'r's Mot. for Summ. J., at 11.) Respondent Parish disagrees, claiming that loading the "dilapidated roadster" onto the trailer for its subsequent transportation is not plain or ordinary use of the Corvette and that the existence of the Dead Storage Exception recognizes the distinction. (Resp't Parish's Resp. to Pet'r's Mot. for Summ. J., at 23.)

In *Hays*, the court found that the defendant used the truck in the ordinary sense because he stated that he often towed and pulled heavy objects with his truck, as he had done in hoisting the toilet onto the deer stand via the pulley system. *Hays*, 314 Ga. App. at 113. In contrast, the Georgia Court of Appeals found that an abandoned trailer on the side of a road, which allegedly caused a car accident because it obscured the drivers' view of oncoming traffic, could not constitute ordinary use of the trailer, *Old Republic*, 250 Ga. App. at 674–76 ("In this case, the trailer was not loaded or attached to any vehicle that could haul it, and it lay broken on the roadside. Accordingly, though it was still a trailer, it was not being utilized as such when the accident occurred."), nor could a three-year-old's use of a car as a playpen, where the child inadvertently released the car's emergency brake and caused the car to roll down the driveway and crash into a telephone pole, *Assurance Co. of Am. v. Bell*, 108 Ga. App. 766, 767–68, 772 (1963) ("The fact that the child unwittingly released the emergency brake while playing around the automobile is not such operation or use of the car as a motor vehicle as is contemplated by the

11

exclusionary provision.").

The Court finds that the third factor also weighs in favor of exclusion. Though Fowler was not injured during a car accident in the traditional sense, the facts giving rise to the present case are more analogous to *Hays* than to *Old Republic* or *Bell* because Parish was driving the Corvette up the trailer ramp at the time of Fowler's injury, like the defendant in *Hays* who was driving the truck to lift the toilet onto the deer stand, and unlike both the stationary trailer in *Old Republic* that allegedly caused a car accident and the child's use of the car as a playpen in *Bell*. Therefore, all three factors favor a finding that Fowler's injuries arose out of the use of the Corvette.

### 4. But-for Causation

In addition to the three-factor test, when the phrase "arising out of" appears in an exclusionary provision of a contested policy, Georgia courts evaluate whether the facts giving rise to the case have the requisite causation, applying the same "but-for" test used to determine cause-in-fact for tort liability. *Hays*, 314 Ga. App. at 114 (citation omitted). Under the but-for test, courts find that "[c]laims arise out of the excluded conduct when[,] 'but for' that conduct, there could be no claim against the insured." *Id.* (quotation marks, bracket, and citation omitted).

Allstate argues that Fowler would not have been injured but for the Respondents' loading of the Corvette onto the trailer. (Pet'r's Mot. for Summ. J., at 12.) Respondent Parish counters that a motor vehicle can be related to

12

the incident without being the cause and that whether Fowler sustained injuries because of the Corvette's loading or his own carelessness remains unresolved. (Resp't Parish's Resp. to Pet'r's Mot. for Summ. J., at 24.) The Court agrees with Allstate's application of the but-for causation test. The dispute over the cause of Fowler's fall from the trailer does not change the fact that, but for the loading of the Corvette onto the trailer (the excluded conduct), Fowler would not have sustained the injuries that he did. Parish's argument is one related to proximate cause, which is not at issue here.

In summary, the Court finds that both the three-factor test for determining whether an injury arose out of the use of a motor vehicle and the but-for causation test require a finding that the Motor Vehicle Use Exclusion provisions in Coverages X and Y bar coverage related to Fowler's injuries.

### B. Motor Vehicle Loading Exclusion

In addition to the exclusion for injuries arising out of motor vehicle *use*, the plain language of the Policy excluding coverage for bodily injury arising out of the *loading* of any motor vehicle or trailer also operates to bar coverage in this case. *See Old Republic*, 250 Ga. App. at 675. Allstate argues for the first time in its reply brief that the Policy's plain terms bar Fowler's injuries from coverage because the Corvette was being loaded at the time of his injuries. (Pet'r's Reply Br. in Supp. of Pet'r's Mot. for Summ. J., at 2 (citing *Jacobs v. Am. Interstate Ins. Co.*, 249 Ga. App. 795 (2001)).) The Court agrees. The Policy bars coverage for "bodily injury . . . arising out of the . . . loading . . . of any

13

motor vehicle or trailer." (Compl., Ex. 1, at 22–23, 25.)

Here, Fowler's injuries arose from the loading of the Corvette onto the trailer. The Court finds no ambiguity in this plain language, and accordingly, the Policy's Motor Vehicle Loading Exclusion provisions bar coverage in this case as well. *See Turner v. Moore*, 752 So. 2d 908, 909–10 (La. Ct. App. 1999) ("'Loading' is loading, and the homeowner's policy here provides no coverage for injuries arising out of same."), *appeal dismissed on reh'g*, *id.* at 911.

### C. Dead Storage Exception

The third issue presented by Allstate's Motion for Summary Judgment is whether the Dead Storage Exception provisions of Coverages X and Y provide an exception to the applicable policy exclusions. The Exception reads as follows: "However, [the Motor Vehicle] exclusion does not apply to . . . a motor vehicle in dead storage or used exclusively on an insured premises." (Compl., Ex. 1, at 39–40, 42.) Allstate argues that, even if the Corvette was in dead storage for a period of time before the incident, the Corvette was no longer in storage when the incident occurred because Parish and Fowler were loading the Corvette onto the trailer. (Pet'r's Mot. for Summ. J., at 16.) In response, Parish contends that Coverages X and Y unambiguously provide coverage for injuries arising out of the maintenance and loading of a motor vehicle in dead storage. (Resp't Parish's Resp. to Pet'r's Mot. for Summ. J., at 7.) In reply, Allstate states that Parish misreads the Policy and that the Dead Storage Exception does not specifically except the loading of a motor vehicle in dead

14

storage. (Pet'r's Reply Br. in Supp. of Its Mot. for Summ. J., at 3–4.)

The arguments here present an issue of contract interpretation. The Court agrees with Allstate and finds that Parish misreads the Policy's Dead Storage Exception. The relevant provision reads as follows:

> **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
>    a) a motor vehicle in dead storage or used exclusively on an **insured premises** . . . .

(Compl., Ex. 1, at 39–40.) Parish reads these two sentences as "provid[ing] coverage for bodily injury arising out of the maintenance or loading of a motor vehicle in dead storage or used exclusively on an insured premises." (Resp't Parish's Resp. to Pet'r's Mot. for Summ. J., at 7–8.) The Court reads the terms "maintenance" and "loading," however, as mutually exclusive from the term "dead storage" as provided in the excerpted provision. *See David v. Tanksley*, 218 F.3d 928, 931 (8th Cir. 2000) (finding the terms "maintenance" and "dead storage" to be mutually exclusive as provided in a motor vehicle exclusion provision of a homeowner's insurance policy and therefore finding that the policy barred coverage in the case). Notably, the Policy's Dead Storage Exception does *not* read "this exclusion does not apply to [*bodily injury arising out of the maintenance or loading of*] a motor vehicle in dead storage." (alteration and emphasis added).

15

The case law cited by Allstate supports the Court's reading of the plain language of the Policy's provisions at issue here. In *Tanksley*, the defendants arranged to sell a 1965 Chevy Impala to the plaintiff's then-fiancé. *Tanksley*, 218 F.3d at 929. The Impala had been parked in storage for five years prior to the sale, and the defendants "did little to maintain the car during this time, twice charging its battery and once starting its engine but otherwise performing no maintenance on the vehicle." *Id.* On the day of the incident, the defendants drove the Impala from its storage area to the driveway in front of their house in preparation for the sale. *Id.* When the plaintiff's fiancé asked to hear the Impala's engine run, the defendants had trouble starting the car. *Id.* Then, in an attempt to start the car, one of the defendants poured gasoline into the Impala's carburetor, but the engine backfired, causing the defendant to jerk back and inadvertently throw gasoline onto the plaintiff. *Id.* That gasoline ignited, and the plaintiff sustained severe burns. *Id.* When the plaintiff sued the defendants for damages arising from her injuries, the defendants sought indemnification under their homeowner's insurer policy. *Id.* at 929–30.

The relevant provisions of the homeowner's insurance policy at issue in *Tanksley* "exclude[d] from coverage any 'bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of motor vehicles'" but provided that the exclusion did not apply to "a vehicle … not subject to motor vehicle registration which is … *in dead storage on an insured location*." *Id.* at 930 (emphasis added). The court ultimately found that the

16

Impala was not in dead storage within the meaning of the homeowner's policy because pouring gasoline into the Impala's carburetor in an attempt to start the engine constituted "maintenance" and because a car undergoing maintenance could not be simultaneously in dead storage. *Id.* at 931 (citing *Holliman v. MFA Mut. Ins. Co.*, 711 S.W.2d 159, 161 (Ark. 1986)).

The Court finds that the Policy at issue here is "substantively indistinguishable" from the one at issue in *Tanksley*, despite the language in the policy exclusion regarding motor vehicle registration in that case. *Id.* Parish attempts to distinguish *Tanksley* by noting that he stored the Corvette in his garage for up to sixteen years, without driving it for eight years, and that the Corvette was not undergoing maintenance at the time of Fowler's injuries. (Resp't Parish's Resp. to Pet'r's Mot. for Summ. J., at 8.) The Court agrees with Allstate that the reasoning from *Tanksley* involving maintenance of a vehicle extends to the present case involving Parish driving the Corvette onto the trailer. (Pet'r's Reply Br. in Supp. of Pet'r's Mot. for Summ. J., at 3.) The focus of the inquiry is "on how the vehicle was being used at the time of the accident at issue," and not any past or intended future use. *Tanksley*, 218 F.3d at 931. As concluded above, driving the Corvette onto the trailer constitutes both use and loading, as provided within the Policy's Motor Vehicle Use Exclusion and Motor Vehicle Loading Exclusion provisions in Coverages X and Y.

The additional case law cited by Allstate on this issue also favors a

finding that the dead storage exception is inapplicable here. For example, the Eighth Circuit found that a dead storage exception to a homeowner's insurance policy did not apply to an incident where a child was thrown from a tractor and killed while on the insured's property. *Am. Fam. Mut. Ins. Co. v. Van Gerpen*, 151 F.3d 886, 887–88 (8th Cir. 1998). The court noted that "dead storage is clearly a type of storage," that "the state of being in storage is inconsistent with the state of being in use," and that "[t]he 'dead' in 'dead storage' suggests, at the least, that the engine would not be running." *Id.* at 888. The Court finds that this reasoning logically and reasonably extends to the loading of the Corvette onto the trailer at issue here because both the tractor in *Van Gerpen* and the Corvette here were in use when the injuries occurred.

Parish's attempt to distinguish *Nationwide Mutual Insurance Co. v. McMahon* is also unavailing. That the defendants in *McMahon* intended to drive the car to another location before they injured the plaintiff while attempting to start the car is immaterial because the car was still undergoing maintenance and therefore could not be in dead storage. *Nationwide Mut. Ins. Co. v. McMahon*, 365 F. Supp. 2d 671, 677 (E.D.N.C. 2005); *see also Tanksley*, 218 F.3d at 931 (noting that intended future use is not the focus of the inquiry). In addition, the court in *Hollis v. St. Paul Fire & Marine Insurance Co.* did not explicitly address the issue of dead storage, though the court's holding regarding exclusion for the maintenance of a motor vehicle under the homeowner's policy is consistent with the body of case law addressed above.

18

*Hollis v. St. Paul Fire & Marine Ins. Co.*, 203 Ga. App. 252, 253 (1992). Finally, the court in *Allstate Insurance Co. v. Breshears* found that the dead storage exception was inapplicable because "the pickup was not in dead storage at the time of the accident, as it was being towed," further supporting the broad construction of "use" under motor vehicle exclusion policies. *Allstate Ins. Co. v. Breshears*, 154 F. App'x 671, 673 (9th Cir. 2005).

Though Allstate bears the burden of persuasion, Parish points to no controlling case law of his own that would contradict Allstate's abundance of authority finding the dead storage exception to various homeowner's policies inapplicable under analogous facts. The lack of contrary authority points to the conclusion that "a vehicle being loaded is not in dead storage and would never meet the dead storage exception to the motor vehicle use exclusion." (Pet'r's Reply Br. in Supp. of Pet'r's Mot. for Summ. J., at 3.) Accordingly, the Court finds that the Dead Storage Exception does not apply here and that the Motor Vehicle Use Exclusion and Motor Vehicle Loading Exclusion provisions in Coverages X and Y bar coverage of the Respondents.

### D. Prompt Notification and Remaining Causes of Action

Having found that the Policy's Motor Vehicle Use Exclusion and Motor Vehicle Loading Exclusion provisions bar coverage and that the Dead Storage Exception is inapplicable, the Court declines to address whether Parish provided sufficient notice under the Policy. The Court finds that it need not resolve Allstate's request for declarations that the Policy's Prompt Notice of

Loss Requirement (Count IV) and Negligent Supervision Exclusion (Count II) provisions bar coverage of Fowler's injuries. The Court's conclusions as to Counts I and III on the Motor Vehicle Exclusion are alone sufficient grounds to enter judgment in favor of the Petitioner Allstate.

### IV. Conclusion

In brief, the Court finds no genuine issue of material fact exists, and therefore, the Petitioner Allstate is entitled to a declaration that it has no coverage obligations under the Policy's Family Liability Protection section of Coverage X or Guest Medical Protection section of Coverage Y. For the foregoing reasons, the Petitioner's Motion for Summary Judgment [Doc. 24] is GRANTED. The Clerk is DIRECTED to enter judgment in favor of the Petitioner Allstate on Counts I and III of the Complaint [Doc. 1], and to close the case.

SO ORDERED, this ___23rd___ day of August, 2022.

THOMAS W. THRASH, JR.
United States District Judge